# 14-3189-cv

IN THE

# United States Court of Appeals

### FOR THE SECOND CIRCUIT

➤➤ ◄◄

RICHARD DUTROW, JR.,

*Plaintiff-Appellant,*

*v.*

THE NEW YORK STATE GAMING COMMISSION, successor in interest to, THE NEW YORK STATE RACING AND WAGERING BOARD, JOHN SABINI, in his official and individual capacities, DANIEL D. HOGAN, in his official and individual capacities, CHARLES J. DIAMOND, in his official and individual capacities, THE ASSOCIATION OF RACING COMMISSIONERS INTERNATIONAL, JOHN AND JANE DOES, said names being fictitious and unknown to the Plaintiff,

*Defendants-Appellees.*

_____

*On Appeal from the United States District Court
for the Eastern District of New York (Brooklyn)*

## BRIEF AND SPECIAL APPENDIX
## FOR PLAINTIFF-APPELLANT

MCLAUGHLIN & STERN
260 Madison Avenue, 10th Floor
New York, New York 10016
212-448-1100

*and*

LAW OFFICES OF MITCHELL C. ELMAN, P.C.
21 Harbor Park Drive North
Port Washington, New York 11050
516-586-6666

*Attorneys for Plaintiff-Appellant*

**TABLE OF CONTENTS**

**Page**

JURISDICTIONAL STATEMENT.........................................1

ISSUE PRESENTED ON APPEAL........................................2

PRELIMINARY STATEMENT............................................2

STATEMENT OF FACTS...............................................5

LEGAL ARGUMENT

    I.  PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIM IS NOT
        PRECLUDED ...............................................11

        a.  The Appellate Division did not Determine the
           Issue of Whether Dutrow Received Procedural
           Due Process or Whether ARCI was Complicit in
           the Denial of Dutrow's Due Process Rights...........13

           i.  The issues in the Article 78 Proceeding
              and the Federal Civil Rights Action are
              not Identical ..................................13

           ii.  The Issues in this Civil Rights Action
              were not Necessarily Decided in the
              Article 78 Proceeding..........................15

           iii. Dutrow did not have a Full and Fair
              Opportunity to Raise his Procedural
              Due Process Claim  ............................16

CONCLUSION......................................................21

CERTIFICATE OF COMPLIANCE WITH RULE 32(A)(7)....................22

i

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Aetna Life Insur. Co. v. Lavoie*, 475 U.S. 813 (1986)...........19

*Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147
    (2d Cir. 2006) .........................................15

*Burgos v. Hopkins*, 14 F.3d 787 (2d Cir. 1994).................11

*Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532
    (1985) ...................................................14

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995)......11, 13, 16, 20

*Donato v. Plainview-Old Bethpage Central School
    District*, 96 F.3d 623 (2d Cir. 1996) ......................16

*Gibson v. Berryhill*, 411 U.S. 564 (1973).....................19

*Goldberg v. Kelly*, 397 U.S. 254 (1970)...................17, 18

*Kulak v. City of New York*, 88 F.3d 63 (2d Cir. 1996)..........13

*Leather v. Eyck*, 180 F.3d 420 (2d Cir. 1999)..................11

*Mathews v. Eldridge*, 424 U.S. 319 (1976).....................17

*New York State Nat'l Org. for Women v. Pataki*,
    261 F.3d 156 (2d Cir. 2001) ................................9

*Shakhnes v. Berlin*, 689 F.3d 244 (2d Cir. 2012)...........17, 18

*Stivers vs. Pierce*, 71 F.3d 732 (9th Cir. 1995)...............19

*Vargas v. City of New York*, 377 F.3d 200
    (2d Cir. 2004) .........................................11, 12

*Withrow v. Larkin*, 421 U.S. 35 (1975)........................19

**Statutes**

28 U.S.C. 1291...................................................1

42 U.S.C. §1983............................................*passim*

CPLR Article 78............................................*passim*

## **Jurisdictional Statement**

The District Court had subject matter jurisdiction over the underlying action pursuant to 42 U.S.C. §1983 because Richard E. Dutrow, Jr. (Dutrow) commenced the within action claiming, *inter alia*, that the New York State Gaming Commission, as successor in interest to the New York State Racing and Wagering Board (Gaming Commission), failed to provide him with procedural due process as guaranteed by the Fourteenth Amendment.  (A.9)  Dutrow further claims that the Association of Racing Commissioners International (ARCI), a not-for-profit corporation, acted in concert with the Gaming Commission to deny him rights guaranteed in the Constitution.  (A.10-11) ARCI is a not-for-profit corporation whose purpose is to coordinate activities and licensing standards in the horse racing industry.  (A.10)

The basis for the Court of Appeals' jurisdiction is 28 U.S.C. 1291 because the District Court has issued a final decision, order and judgment dismissing all of Dutrow's claims. The District Court's final decision and order was docketed on or about July 29, 2014 and the Notice of Appeal was timely filed and docketed on or about August 25, 2014.  (SPA 1-14)

1

## Issue Presented on Appeal

Whether the District Court erred in finding that Dutrow's federal civil rights claim was precluded based upon a prior Article 78 Proceeding. The standard of review on this issue is *de novo*.

## Preliminary Statement

This appeal arises out of a flawed administrative system within the Gaming Commission that denied Dutrow procedural due process. The Article 78 Proceeding, by its very nature and standard of review, that followed was unable to correct or undo these flaws. The only remaining redress available to Dutrow was the filing of this plenary federal civil rights action in the District Court against parties who could not have been named in any prior state court or administrative proceeding.

As set forth more fully below, during his administrative hearing before the Gaming Commission, Dutrow repeatedly raised an important issue – that Gaming Commission Chairman John Sabini (Sabini) was biased and had a conflict of interest. Dutrow outlined the particulars of Sabini's bias/conflict and explained how that was at odds with Sabini's role in the administrative process including commencing the administrative proceeding, appointing the hearing officer (who was, and remains, a private local attorney), and ultimately deciding Dutrow's liability and penalty. (A.16,211,293-311,313-315)

2

Despite raising the issue of Sabini's bias and conflict of interest on numerous occasions throughout the hearing, Dutrow's arguments fell into a procedural black hole either intentionally or because the administrative process was defective. Either way, the outcome remained the same – the issue of Sabini's bias and conflict went unresolved. Sabini was never required to address that issue either under oath or on the record. From that point forward, the issue of Sabini's bias and conflict of interest was never fully litigated nor could it have been because Sabini never directly addressed the issue and neither did ARCI. They both remained silent on the matter and the administrative procedure in place permitted them to do so in violation of the Fourteenth Amendment. The process employed by the Gaming Commission unlawfully shielded Sabini and ARCI from disclosing their biases and prejudices against Dutrow.

Dutrow tried in a subsequent Article 78 Proceeding to raise the issue of Sabini's bias and conflict of interest but the damage was already done. (A.139-178) Sabini and ARCI were not parties to the underlying administrative proceeding, they were not required to personally respond to the allegations, and the hearing officer and the Gaming Commission refused to issue a decision on the issue. The administrative procedure imposed by the Gaming Commission and the subsequent Article 78 Proceeding had no mechanism or process for dealing with Dutrow's claims

3

against Sabini or ARCI. In fact, the system accomplished just the opposite –- it fostered and created a procedure that avoided dealing with such issues in violation of the Due Process Clause. As a result, the issue of Sabini's bias/conflict went unanswered because no formal decision on the matter was ever made at the administrative level which subsequently impaired Dutrow's ability to fully and fairly litigate that issue in the Article 78 Proceeding that followed.

Dutrow then filed the within civil rights action in the District Court to redress the procedural infirmities at the administrative hearing. In particular, Dutrow alleged, among other things, that his procedural due process rights were violated because there was no procedure in place at the Gaming Commission for him to effectively challenge Sabini's bias and conflict of interest or ARCI's role in it. (A.18-22) The Gaming Commission (which only had three members: Chairman Sabini, Daniel Hogan and Charles Diamond) refused to make a ruling on the issue and did not require Sabini or ARCI to directly answer the allegations against them either under oath or on the record. Although procedural due process may not require a decision-maker to respond to every allegation of bias or conflict in every situation, we respectfully submit that it was required in this instance because of the property interest

4

at stake -- Dutrow's livelihood -- and the minimal burden that it would impose on the administrative agency.

The Gaming Commission and ARCI moved to dismiss Dutrow's federal complaint on several grounds but the District Court only ruled on one of them -- issue preclusion/collateral estoppel. (A.116-117)  The District Court held that although it had jurisdiction, Dutrow's procedural due process claim was precluded because he had a full and fair opportunity to litigate that issue in the administrative hearing/Article 78 Proceeding and that issue was necessarily decided therein.  (SPA.8-12)  We respectfully disagree and for the reasons set forth below, the decision of the District Court should be reversed.

## Statement of Facts

Dutrow was a licensed thoroughbred horse trainer in the State of New York for over twenty years.  (A.10)  However, in or about February 16, 2011, he was suspended for 90 days for possessing syringes and because one of his horses tested post-race positive for traces of a banned substance. (A.81)  News of Dutrow's conduct reached the office of U.S. Senator Tom Udall of New Mexico. *Id.*

Senator Udall felt that the Gaming Commission was being too "light" on Dutrow considering that, according to Senator Udall, Dutrow had a history of violating the rules and should have been more severely punished.  *Id.*  As a result, the Senator's office

5

wrote to Ed Martin (Martin) the President of ARCI on February 17, 2011 expressing his concerns about Dutrow's "light" punishment. *Id.*

On February 17, 2011, ARCI issued a letter and press release to the Gaming Commission demanding that it commence a proceeding to review Dutrow's entire career history and revoke his license, permanently removing him from the horse racing industry. (A.82) On that same day, Martin forwarded the Senator's concern to Sabini at his Gaming Commission email address, warning Sabini that Sabini's sanction against Duntrow had "caught the attention of the Senator's staff." (A.81) At that instance, Sabini had a conflict of interest. (A.10,11,313)

Within 13 days, Sabini's office issued an Order to Show Cause dated March 2, 2011, as to why Dutrow's horse training license should not be permanently revoked. (A.187) Sabini, acting in concert with ARCI, used his dual positions as Chairman of the Gaming Commission and Chairman-Elect of ARCI to revoke Dutrow's license. (A.10,11,313) What was once a 90-day suspension turned into a lifetime ban once Sabini (wearing his ARCI hat) got involved.

The administrative proceeding against Dutrow was handled entirely within the confines of the Gaming Commission where Sabini controlled the process. Sabini controlled the charges brought against Dutrow, the parties to the proceeding, appointed

6

the administrative hearing officer (Clemente Parente, a local
attorney who did not work at the Gaming Commission) who presided
over the hearing, and Sabini had final say over the hearing
officer's findings of fact, conclusions of law, and penalty
against Dutrow.  (A.16)

The hearing was held at the Gaming Commission's offices
over the course of three days, May 31, 2011, June 2, 2011 and
June 3, 2011.  (A.211)  At the hearing, and prior to any
testimony, Dutrow's attorney made an oral motion to have Sabini
recused from the entire process.  *Id.*  The hearing officer,
purportedly to give the parties an opportunity to provide
written submissions on the issue, reserved decision.  *Id.*
Within a week, Dutrow's counsel filed a written motion
requesting that Sabini recuse himself from the process arguing
that Sabini was biased and conflicted (or at least had the
appearance of being both) based upon his simultaneous dual roles
as Chairman of the Gaming Commission and board member, Secretary,
Treasurer and Chairman-Elect of ARCI.  *Id.* (A.293-310)

The Gaming Commission opposed Dutrow's motion.  Notably,
neither Sabini nor ARCI responded to the allegations against
them.  They remained silent, did not respond to the motion and
neither the hearing officer nor the Gaming Commission required
them to.  The Gaming Commission merely submitted an attorney
declaration from its in-house counsel, Rick Goodell (Goodell),

who summarily claimed that Sabini had no conflict. (A.316-319)
In addition to this submission having no evidentiary value,
Goodell also had a conflict because he too was a member of ARCI.
In fact, he was counsel to ARCI. (A.20)

    After concluding the hearing three months earlier and being
*sub judice*, the hearing officer, by email dated September 12,
2011, refused to rule on the issue of Sabini's bias/conflict.
With the record now closed, the hearing officer claimed that he
did "not have authority to grant such a motion and that a
decision concerning recusal of [Sabini] is a determination that
must be made by [Sabini] and not by the Hearing Officer."
(A.311) The hearing officer did not cite any rule, law or
regulation supporting his decision (or lack thereof). *Id.*

    Two days later, on September 14, 2011, Dutrow's lawyer
wrote directly to Sabini requesting that he recuse himself from
the process because of his relationship with ARCI and ARCI's
lobbying efforts to have the Gaming Commission revoke Dutrow's
license. (A.313-315)

    On September 22, 2011, counsel for the Gaming Commission
responded. Counsel stated that the Gaming Commission "continues
to disagree" with Dutrow's claims and, like before, relied on
declarations from Goodell summarily concluding that no conflict
of interest existed. (A.316-319) Once again, Sabini and ARCI
remained silent, did not respond to the letter and neither the

8

hearing officer nor the Gaming Commission required a response from them or ruled on the matter.

In what appears to be a coordinated effort, on that very same day (September 22, 2011), the hearing officer issued his report.[1] The hearing officer ruled against Dutrow and recommended that his license be revoked and he be fined $50,000. (A.209-225) At this point, Dutrow hit a procedural brick wall on the issue of Sabini's bias and conflict. The hearing officer told Dutrow (after the hearing concluded) to go to Sabini. Dutrow then went to Sabini and Sabini refused to personally address the issue one way or the other – that very same day the hearing officer ruled on the merits of the case. The bias-conflict issue went unanswered. No decision was made on that issue because it went into a procedural black hole within the Gaming Commission, never fully litigated or adjudicated.

Three weeks later, the Gaming Commission issued a Final Order revoking Dutrow's license for 10 years (which is effectively a lifetime revocation for Dutrow), banning Dutrow from all racetracks throughout New York State, further banning him from associating with persons who use those racetracks

---

[1] Once the hearing officer ruled on the merits, his jurisdiction over the case ended and applying for a writ of mandamus requiring him to rule on the bias/conflict issue would have been futile. *See, New York State Nat'l Org. for Women v. Pataki,* 261 F.3d 156, 168 (2d Cir. 2001)(plaintiff could have achieved adequate due process by commencing an Article 78 Proceeding to mandamus state actors to perform certain acts).

(which includes his family members), and imposing a $50,000 fine. (A.204-208).

Dutrow appealed the Gaming Commission's decision to the Supreme Court of the State of New York, Appellate Division, Third Department ("Appellate Division") pursuant to New York's CPLR Article 78. (A.179) On appeal, Dutrow attempted to argue, *inter alia,* that his right to due process had been violated based upon Sabini's bias/conflict, but this argument was confined to the limited record (or lack of it) created in the underlying hearing and the absence of any decision on the issue below. (A.139-178) The Appellate Division's decision made reference to this argument but rejected it holding that it was a "bare allegation" and that Dutrow did not have a "factual demonstration to support the allegation". (A.180-181) After the Appellate Division's ruling, the New York Court of Appeals denied Dutrow's appeal *sua sponte*, finding that no substantial constitutional question was directly involved. (A.183)

The flaws in the administrative hearing process spilled over into the Article 78 Proceeding. The Article 78 Proceeding was limited in the parties, record and relief that could be afforded Dutrow. The issue of Sabini's bias and conflict was left unanswered, never fully or fairly litigated. The within federal civil rights action affords Dutrow that opportunity and a remedy that was previously unavailable to him.

10

**Legal Argument**

**I.   PLAINTIFF'S PROCEDURAL DUE PROCESS CLAIM IS NOT PRECLUDED**

This Circuit has held that Article 78 Proceedings generally do not preclude subsequent federal civil rights actions based upon the same set of facts.  The rationale behind this rule is that Article 78 Proceedings, by their very construct, do not afford litigants the full scope of available remedies, the opportunity to name all of the potential parties, or the substantive and procedural processes that a plenary federal civil action provides.

"[W]here … a section 1983 action is brought … New York's claim preclusion rule does not apply because a state court entertaining an Article 78 proceeding does not have the power to award the full measure of relief available in subsequent 1983 litigation."  *Vargas v. City of New York*, 377 F.3d 200, 205 (2d Cir. 2004); *Colon v. Coughlin*, 58 F.3d 865, 870 n.3 (2d Cir. 1995).  Section 1983 compensatory damages for pain and suffering or punitive damages are not incidental damages in an Article 78 proceeding and therefore, unlike a Section 1983 action, cannot be awarded therein.  *Leather v. Eyck,* 180 F.3d 420, 424 (2d Cir. 1999; *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994). Therefore, where there is an incomplete overlap between the relief available to a plaintiff in an Article 78 proceeding and a subsequent case, issue preclusion generally does not apply.

11

The District Court correctly recognized this rule stating that claim preclusion generally does not operate to bar a §1983 suit following the resolution of an Article 78 proceeding, but then deviated from that rule applying *Vargas v. City of New York*, 377 F.3d 200 (2d Cir. 2004) and held that Dutrow's procedural due process claim was precluded. (SPA 1-12)

In *Vargas* (unlike here), issue preclusion applied because the Article 78 proceeding provided Vargas with a meaningful post-deprivation remedy. Here, on the other hand, the Article 78 Proceeding was insufficient to protect Dutrow's rights because there was no decision, rationale or ruling on the bias/conflict issue below for which the Article 78 was based. In addition, Dutrow now seeks damages against parties that were unavailable in the context of the Article 78 Proceeding, including claims against ARCI, Sabini and the Gaming Commission for an award for compensatory and punitive damages, and attorneys' fees, as well as special damages for violation of his state common law claims. (A.18-26)

12

**a. The Appellate Division did not Determine the Issue of Whether Dutrow Received Procedural Due Process or Whether ARCI was Complicit in the Denial of Dutrow's Due Process Rights**

In the District Court, it was ARCI, Sabini and the Gaming Commission's burden to "clearly" demonstrate that the issues in the within proceeding and the issues in the Article 78 Proceeding/administrative hearing were identical and necessarily decided. *See*, *Colon*, 58 F.3d at 869; *Kulak v. City of New York*, 88 F.3d 63, 72 (2d Cir. 1996)). We respectfully submit that the District Court erred in finding that they met their high burden.

**i. The issues in the Article 78 Proceeding and the Federal Civil Rights Action are not Identical**

In the Article 78 Proceeding, the issue was whether the Gaming Commission acted arbitrarily and capriciously in revoking Dutrow's horse training license. To meet that burden, Dutrow was limited to the procedures and record that was available to him in the administrative proceeding below. Although he tried to make a full record on the issue of Sabini's bias and conflict of interest as well as ARCI's complicity in it, he was unable to do so. The hearing officer refused to issue a ruling but only informed Dutrow of that after the hearing was closed. In addition, ARCI was not a party, the Gaming Commission failed to make a ruling on the issue and did not require either Sabini or ARCI to directly respond to the allegations. As a result, the

13

record on this issue in the Article 78 Proceeding was extremely limited and lacked the finality of a decision.

The issue here in the federal civil rights action is not whether the decision of the Gaming Commission was arbitrary and capricious (which was the issue in the Article 78 Proceeding); but rather: (a) whether Dutrow's Fourteenth Amendment procedural due process rights were violated when the hearing officer and Sabini refused to rule on Dutrow's claim that Sabini was biased and conflicted,[2] (b) whether Dutrow was entitled to have an on the record response from Sabini and/or ARCI regarding the conflict-bias issue, and (c) whether ARCI was complicit with Sabini in denying Dutrow's due process rights. Nowhere in the Appellate Division's opinion were these issues fully decided one way or the other. Accordingly, ARCI, Sabini and the Gaming Commission have not "clearly" established, as they must, that the issues decided in the Article 78 proceeding are identical to the issues before the District Court. Thus, on this basis alone, they have failed to demonstrate that Dutrow's federal civil rights action is barred by collateral estoppel.

_____

[2] There is no dispute that Dutrow has a constitutional property and liberty interest in his horse training license. *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532 (1985)(holding that revocation of trade licenses implicate due process protections under the Constitution). "Liberty, as enshrined in the Fourteenth Amendment, is a broad notion, and one of the many freedoms it encompasses is the freedom to engage in any of the common occupations of life." *Donato v. Pleanview-Old Bethpage Central School District,* 96 F.3d 623, 630 (2d Cir. 1996)(internal citations omitted).

**ii.   The Issues in this Civil Rights Action were not Necessarily Decided in the Article 78 Proceeding**

ARCI and the Gaming Commission have also failed to demonstrate that the issue at bar was "necessarily" decided in the prior Article 78 Proceeding.  For an issue to have been "necessarily decided" it "must have been both actually decided … and necessary to support a valid and final judgment on the merits."  *Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 153 (2d Cir. 2006).  Again, as set forth above, the Article 78 Proceeding did not actually decide whether Dutrow was deprived of procedural due process rights.  The Article 78 Proceeding did not determine whether, under the Fourteenth Amendment, an actual decision was required by either the hearing officer or Sabini himself on the issue of Sabini's bias/conflict.  The Article 78 Proceeding similarly did not determine whether due process requires, under these circumstances, that ARCI and/or Sabini directly respond to the allegations of bias/conflict or whether an attorney declaration was sufficient.  Accordingly, Dutrow cannot be precluded from raising these issues in his §1983 action because they were not previously decided.

### iii. Dutrow did not have a Full and Fair Opportunity to Raise his Procedural Due Process Claim

Once it is "quite clear" that the moving party has established that the issues are identical and were necessarily decided, the burden then shifts to the non-moving party to demonstrate that he was not provided a full and fair opportunity to raise those issues. *Colon*, 58 F.3d at 869.

Even if this Court were to find that ARCI, Sabini and the Gaming Commission have clearly demonstrated that the issues are identical and were necessarily decided in the prior proceeding, Dutrow cannot be collaterally estopped from raising them in the District Court since he was not previously afforded a full and fair opportunity to litigate them. *See Colon*, 58 F.3d at 870-871.

"Since due process is a flexible notion, the procedural protection accorded a constitutional interest is determined by reference to the particular circumstances of a given case." *Donato v. Plainview-Old Bethpage Central School District,* 96 F.3d 623, 633 (2d Cir. 1996). The determination of what process is due (or full and fair) typically involves a balancing of three factors: *first*, the private interest that will be affected by the official action; *second*, the risk of erroneous deprivation of such interest through the procedures used, and the probable value of additional or substitute procedural

16

safeguards; and, *third*, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Notwithstanding all of these factors, a hallmark of any due process analysis is "an impartial decision maker". *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970). Similarly, albeit in the context of a Medicaid administrative hearing with statutory requirements, this Circuit held that due process includes a right to a *decision*. *Shakhnes v. Berlin,* 689 F.3d 244, 256 (2d Cir. 2012)(emphasis added).

The hearing officer and Sabini's refusal to rule on the bias/conflict of interest claims raised by Dutrow created a procedural environment where not only was an effective appeal virtually impossible but a substantial risk existed that Dutrow was erroneously be deprived of his trainer's license; a significant property interest. By requiring the hearing officer or Sabini to timely rule on the issue or requiring a direct response from Sabini/ARCI, would ensure a fair process and an opportunity for meaningful appellate review. This process is not unduly burdensome for the Gaming Commission because it could be conducted in the administrative hearing itself at no additional cost.

It is an elementary requirement of due process that a decision-maker's conclusion "rest solely on the legal rules and evidence adduced at the hearing". *Goldberg v. Kelly*, 397 U.S. 254, 270 (1970). "[T]he decision maker should state the reasons for his determination and indicate the evidence he relied on, though his statement need not amount to a full opinion or even formal findings of fact and conclusions of law." *Id.* "We see little reason why this would be so unless the right to a fair hearing includes the right to a decision." *Shakhnes v. Berlin,* 689 F.3d 244, 256 (2d Cir. 2012). Here, a decision was never rendered on Sabini's bias and conflict. Dutrow was never given an official ruling as to whether Sabini was biased against him or conflicted. Sabini never personally testified about it or gave a statement that was placed into the record and neither did ARCI. The issue was brushed aside and never fully litigated to conclusion. The Article 78 Proceeding did not fully deal with it either. The Appellate Division, on the limited record before it, held that "the record is devoid of evidence" of Sabini's bias. That is the basis of the issues raised in Dutrow's current federal civil rights action -- that the Gaming Commission and Sabini did not employ a procedure to address and rule upon Dutrow's claim of bias and conflict.

It is axiomatic that the Due Process Clause entitles a person to an impartial and disinterested tribunal. This

18

requirement applies not only to courts, but also to state administrative agencies charged with applying eligibility criteria for licenses. *Withrow v. Larkin,* 421 U.S. 35, 46 (1975). The Supreme Court has held that a state licensing tribunal violates due process when its members have a direct and substantial competitive interest in the outcome of the proceedings before them. *Gibson v. Berryhill,* 411 U.S. 564, 578-79 (1973).[3] However, the Constitution is not only concerned with actual bias but also with the appearance of bias. *Id.* The appearance of partiality in itself renders the proceedings objectionable, without any showing that the adjudicator was actually biased. *Aetna Life Insur. Co. v. Lavoie,* 475 U.S. 813, 825 (1986).

Permitting Sabini to appoint the administrative hearing officer without first resolving the issue of his bias/conflict is a fatal procedural infirmity. ARCI (of which Sabini was Treasurer, Secretary, board member and Chairman-Elect) was committed to banning Dutrow from the horse racing industry. ARCI then lobbied the Gaming Commission for that relief where

---

[3] Even the bias of a single member on a small administrative board is a due process violation regardless of whether that member casts the deciding vote because a single person's bias is likely to have a profound impact on the decision making process. *Stivers vs. Pierce,* 71 F.3d 732, 747-48 (9th Cir. 1995) (collecting cases from multiple circuit courts on the issue). Similarly, in *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 831 (1986), Justice Brennan set forth his observations about the collective process of deliberation: "The participation of a judge who has a substantial interest in the outcome of a case … necessarily imports a bias into the deliberative

Sabini was the Chairman.  As a result, Sabini issued the Order to Show Cause against Dutrow, appointed a hearing officer, and ultimately affirmed the hearing officer's decision to ban Dutrow from the horse racing industry.  As the Second Circuit held in *Colon*, even "to the extent that factual issues crucial to [plaintiff's] § 1983 claim were resolved against him in the [prior] hearing, [plaintiff] is not bound to that result because the bias of the hearing officer deprived [him] of a full and fair opportunity to litigate the claim."  *Colon*, 58 F.3d 865.

The lack of procedural safeguards whether systemic at the Gaming Commission or as applied to Dutrow is constitutionally troubling.  Allowing state actors to ignore claims of bias or conflict prevents proper appellate or judicial review.  We respectfully submit that such a lack of process is contrary to the Fourteenth Amendment – particularly when a significant property interest is at stake.  Accordingly, Dutrow did not have a full and fair opportunity to litigate the issues that are currently presented in his federal civil rights action.

---

process. This deprives litigants of the assurance of impartiality that is the fundamental requirement of due process."

## CONCLUSION

We respectfully submit that the District Court erred in its analysis. The issue of Sabini's bias/conflict of interest and ARCI's role in it was neither previously decided nor was Dutrow given a full and fair opportunity to litigate it. As a result, the decision of the District Court should be reversed.

Dated:   New York, New York
         October 22, 2014


                    McLAUGHLIN & STERN, LLP

                    By: _____
                    Steven J. Hyman
                    Alan E. Sash
                    Jonathan R. Jeremias
                    260 Madison Avenue
                    New York, New York 10016
                    (212) 448-1100

                    *Attorneys for Plaintiff-Appellant*

## Certificate of Compliance with Rule 32(a)(7)

This brief complies with FRAP 32(a)(7). The number of words is 4,525 and the number of lines is 514.

**SPECIAL APPENDIX**

## **Table of Contents**

**Page**

Memorandum and Order of the Honorable Sandra L. Townes,
    dated July 29, 2014, Appealed From ........................................... SPA1

Judgment of the United States District Court,
    Eastern District of New York, dated July 29, 2014,
    Appealed From ............................................................................ SPA13

Notice of Appeal, dated August 25, 2014 .......................................... SPA14

# SPA1

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUL 29 2014 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------x

RICHARD DUTROW, JR.,

                           Plaintiff,

     -against-

THE NEW YORK STATE GAMING COMMISSION,
successor in interest to THE NEW YORK STATE
RACING AND WAGERING BOARD, et al.,

                         Defendants.

--------------------------------------------------------------------x

**MEMORANDUM & ORDER**

13-CV-996 (SLT) (RER)

**TOWNES, United States District Judge:**

Plaintiff Richard Dutrow, Jr., ("Plaintiff"), brings this action pursuant to 42 U.S.C.

§ 1983, alleging that the decision of the New York State Racing and Wagering Board ("RWB")

(succeeded by the New York State Gaming Commission ("NYSGC")) to revoke his horse

training license violated his federal due process rights and constitutes a prima facie tort under

New York State law.  The NYSGC, John Sabini, Daniel D. Hogan, and Charles J. Diamond

(collectively, "State Defendants") and the Association of Racing Commissioners International

("ARCI") separately move to dismiss the case.  For the reasons set forth below, the motions are

granted.

## I.    BACKGROUND

### A.    The Parties

ARCI is not-for-profit association of state racing boards, racing commissions, racing

regulatory agencies, and private organizations, created under the laws of Kentucky.  (Compl.

introduction, ¶ 6).  ARCI's purpose is to coordinate activities and licensing standards in the

various states, and to otherwise promote thoroughbred racing.  (Compl. ¶ 7). The RWB, now the

# SPA2

NYSGC, was a New York State agency tasked with overseeing thoroughbred racing and licensing horse trainers. (Compl. ¶ 13). RWB officers were included among the members of ARCI. (Compl. ¶ 8). At the time of the events alleged in this action, Sabini was both chairperson of the RWB and a member of the ARCI board. (Compl. ¶ 11). Plaintiff had worked as a licensed thoroughbred horse trainer in New York for more than twenty years. (Compl. ¶ 5).

### B.    Administrative Proceedings

On February 16, 2011, the RWB imposed a 90-day suspension against Plaintiff following an accusation that he possessed syringes in his barn and administered a certain drug to one of his horses. (Compl. ¶ 19). The suspension was stayed pending Plaintiff's appeal of the RWB's findings. (Compl. ¶ 21). On February 17, 2011, however, ARCI's president alerted Sabini to criticism from a government official that the RWB's 90-day suspension was too lenient based upon Plaintiff's history. (Compl. ¶ 22). Officers and members of ARCI then "met and approved a plan to petition the RWB . . . to review [Plaintiff's] training license to determine his suitability to continue his participation in horseracing." (Compl. ¶ 23). The same day, ARCI issued a letter urging the RWB to review Plaintiff's license by an order to show cause why it should not be revoked. (Compl. ¶ 24). ARCI separately issued a press release, publicly calling for the RWB to "examine [Plaintiff's] career in racing to see if sufficient evidence exists to say enough is enough." (Compl. ¶ 26). The RWB thereafter issued an order to show cause as to why Plaintiff's license should not be revoked. (Compl. ¶ 29). Sabini, as chairman of the RWB, appointed a hearing officer to consider the issue. (Compl. ¶¶ 31, 32).

On June 10, 2011, following a verbal motion at the outset of the hearing, Plaintiff filed a written motion to dismiss the RWB charges or, alternatively, to strike the revocation penalty and

# SPA3

recuse Sabini from participating in the matter. (Ex. H at 1, 4).[1] In this motion, Plaintiff asserted that the RWB's decision to seek revocation was made in retaliation for Plaintiff's appealing his original suspensions and resulted from Sabini's "improper interactions and influence," which denied Plaintiff due process. (Ex. H at 1). In support of his motion, Plaintiff offered evidence of communications from a U.S. Senator's office inquiring whether the 90-suspension seemed a "light penalty" given Plaintiff's past, as well as descriptions of the subsequent press release, emails, and other events involving Sabini. (Ex. H at 2-3).

By email dated September 12, 2011, the hearing officer issued a decision denying Plaintiff's motion in its entirety "except with respect to that portion . . . seeking to have Chairman Sabini recused." (Ex. I at 1 ¶ 4). The hearing officer wrote that he did not have the authority to grant such a request because the decision to recuse must be made by the Board member himself. (Ex. I at 1 ¶ 4). By letter dated September 14, 2011, counsel for Plaintiff wrote directly to Sabini, seeking his recusal. (Ex. J). Counsel for the RWB responded by letter that Sabini would not recuse himself, citing the facts and arguments advanced in opposition to Plaintiff's original request before the hearing officer. (Ex. K).

Ultimately, the hearing officer found against Plaintiff and the RWB adopted those findings, revoking Plaintiff's license for ten years, banning him from all New York racetracks, and imposing a $50,000 penalty. (Compl. ¶ 35).

## C.   Article 78 Petition

On October 12, 2011, the New York State Supreme Court granted Plaintiff's motion for a temporary restraining order to stay enforcement of the RWB's decision and scheduled a hearing on Plaintiff's preliminary injunction request. (Ex. B ¶ 61). On October 17, 2011, after hearing

---

[1]      "Ex." refers to the exhibits sequentially appended to multiple Michael J. Siudzinski, Esq., declarations, dated June 18, June 20, and September 10, 2013. (Docket Nos. 32, 33, 36).

# SPA4

oral argument, the state court granted Plaintiff's request for 30 days to allow Plaintiff to prepare and file his N.Y. C.P.L.R. Article 78 petition (the "Petition"). (Ex. B ¶ 62). Plaintiff thereafter timely filed his Petition, asserting that the RWB's decision violated his due process rights because (1) Sabini's dual roles created a conflict of interest; (2) the decision was made in retaliation for Plaintiff's exercising his right to appeal the initial 90-day suspension; and (3) the regulatory standards were vague. (Ex. B ¶ 65). Plaintiff also alleged that the RWB's decision was not supported by substantial evidence and that the punishment imposed was "shocking to any sense of fairness." (Ex. B ¶¶ 118-19, 203).

On July 19, 2012, the Appellate Division, Third Department ("Appellate Division"), confirmed the RWB's determination and dismissed the Petition. Dutrow v. New York State Racing and Wagering Bd., 97 A.D.3d 1034, 1037 (3rd Dep't 2012). The decision directly addressed Plaintiff's claim that, after "a United States Senator's office had inquired about the case," ARCI's president publicly urged the RWB to assess Plaintiff's suitability for participation in racing. Id. at 1035. The Appellate Division found that Sabini, who had been informed of the Senator's inquiry, "was not bound to follow any suggestions made by [ARCI] or its president, and the record is devoid of evidence that he took any action based upon the communications or otherwise gave the impression that [he] had prejudged the facts." Id. at 1036 (internal quotation marks omitted). The Appellate Division also concluded that the RWB's determination was supported by substantial evidence, that the punishment "was not so disproportionate to his proven, recurrent misconduct as to shock one's sense of fairness," and that the assertions of regulatory vagueness were unpreserved for review. Id. at 1037.

On October 23, 2012, the New York Court of Appeals dismissed Plaintiff's appeal, sua sponte, on the ground that "no substantial constitutional question is directly involved." Dutrow

# SPA5

v. New York State Racing and Wagering Bd., 19 N.Y.3d 1064 (2012).  Accordingly, on January 17, 2013, the RWB's order revoking Plaintiff's license took effect.  (Compl. ¶ 78).

### D.    Federal Action

On February 25, 2013, Plaintiff commenced this § 1983 action against State Defendants and ARCI, alleging that they acted under color of state law to deprive him of his property interest in his training license without due process "because Sabini was on both sides of the equation" and the proceedings had a "preordained result."  (Compl. ¶¶ 56, 67).  Plaintiff seeks damages for the loss of this property interest as well as a declaratory judgment restoring his license and "prospectively enjoining" other restraints that flow from its revocation.  (Compl. ¶¶ 75, 84).  He also seeks special damages in compensation for an alleged state law tort.  (Compl. ¶ 99).

State Defendants and ARCI separately move to dismiss the action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  State Defendants argue that Plaintiff's claims are barred by the Rooker-Feldman doctrine, Eleventh Amendment immunity, quasi-judicial immunity, collateral estoppel, and res judicata.  ARCI argues, as do State Defendants in the alternative, that Plaintiff fails to state a claim.  Plaintiff opposes both motions, which are now fully briefed.

## II.    LEGAL STANDARD

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction."  Magee v. Nassau Cnty. Med. Ctr., 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998) (citing Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990)).

# SPA6

Rule 12(b)(1) provides for dismissal of a claim when the federal court "lacks jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). The court accepts as true all factual allegations in the complaint, but should not draw inferences favorable to the party asserting jurisdiction. J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004). In evaluating a motion to dismiss under Rule 12(b)(1), the court may consider evidence outside the pleadings, such as affidavits and other documents. See Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).

When considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007). To withstand a motion to dismiss, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Id. at 555, 570. Outside the four corners of the complaint, a court can consider only "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993); see Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004) ("[W]e may also look to public records, including complaints filed in state court, in deciding a motion to dismiss.").

# SPA7

## III.   DISCUSSION

As noted, the Court must first address the contention that it lacks subject matter jurisdiction. The only asserted basis in this case for dismissal pursuant to Rule 12(b)(1) is the Rooker-Feldman doctrine. In contrast, res judicata (claim preclusion) and collateral estoppel (issue preclusion) "are not jurisdictional and are properly considered under Rule 12(b)(6)." Kwiecinski v. John K. Renke II, Law Office, No. 11-CV-2246 (SJF) (AKT), 2012 WL 4344589, at *5 (E.D.N.Y. July 30, 2012) (citing Thompson v. Cnty. of Franklin, 15 F.3d 245, 253 (2d Cir. 1994)). As to State Defendants' Eleventh Amendment argument, "whether the claim of sovereign immunity constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense is an open question in the Supreme Court and the Second Circuit." Carver v. Nassau Cnty. Interim Fin. Auth., 730 F.3d 150, 156 (2d Cir. 2013) (citing Wisconsin Dep't of Corr. v. Schacht, 524 U.S. 381, 391 (1998)). The Court will follow others in this Circuit in taking the latter view. See JTE Enterprises, Inc. v. Cuomo, No. 13-CV-1425 (ADS) (WDW), 2014 WL 639423, at *5 (E.D.N.Y. Feb. 15, 2014) (collecting cases).

### A.   Rooker-Feldman Doctrine

The Rooker-Feldman doctrine stands for the proposition that "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005). However, a district court is not prevented "from exercising subject matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005).[2] In the Second Circuit, the following factors must be

---

[2]   Notably, after Exxon Mobil, the Second Circuit emphasized the narrowness of Rooker-Feldman's applicability, as "evidenced by the fact that the Supreme Court has only applied the doctrine twice – in the two cases after which the doctrine was named." McKithen v. Brown, 481 F.3d 89, 96 (2d Cir. 2007) (rev'd on other grounds); see Lance v. Dennis, 546 U.S. 459, 463

# SPA8

satisfied to trigger the Rooker-Feldman bar: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." Hoblock, 422 F.3d at 85 (internal quotation marks and brackets omitted).

In this case, the second requirement is not satisfied. Unlike a preclusion analysis, "the applicability of the Rooker-Feldman doctrine turns not on the similarity between a party's state-court and federal-court claims . . . , but rather on the causal relationship between the state-court judgment and the injury of which the party complains in federal court." McKithen, 481 F.3d at 97-98 (emphasis in original). As such, "a plaintiff who seeks in federal court a result opposed to the one he achieved in state court does not, for that reason alone, run afoul of Rooker-Feldman." Hoblock, 422 F.3d at 87. Here, Plaintiff pleads that his injuries were caused by the RWB's revocation of his license without due process of law – not by the state court judgment that "simply ratified, acquiesced in, or left unpunished" the RWB's determination. Id. at 88. The Rooker-Feldman doctrine therefore does not prohibit this Court from exercising subject matter jurisdiction over Plaintiff's § 1983 claims. In exercising its jurisdiction, however, the Court finds that these claims are precluded.

## B. Preclusion

Under 28 U.S.C. § 1738, a federal court must "give the same preclusive effect to a state-court judgment as another court of that State would give." Exxon Mobil, 544 U.S. at 293. New York law therefore governs the preclusive effect of the Article 78 court's judgment in this case. See Thomas v. Venditto, 925 F. Supp. 2d 352, 360 n.7 (E.D.N.Y. 2013). Collateral estoppel, or

---

(2006) ("The Rooker-Feldman doctrine takes its name from the only two cases in which we have applied this rule to find that a Federal District Court lacked jurisdiction.").

# SPA9

issue preclusion, applies if "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." Vargas v. City of New York, 377 F.3d 200, 205-06 (2d Cir. 2004).[3] "The party asserting issue preclusion bears the burden of showing that the identical issue was previously decided, while the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding." Colon, 58 F.3d at 869.

### 1.   Identity of Issues

State Defendants argue that Plaintiff raises the same issue here – whether Sabini's dual roles and alleged conflict of interest caused a due process violation – that he raised in his Petition before the Appellate Division. (State Defs. Mem. at 11-12; State Defs. Reply at 5-8). In response, Plaintiff contends that his § 1983 due process claims arise from "Sabini and the RWB's refusal to hold a hearing to create [a] full and fair record regarding Sabini's bias and conflict of interest," (Compl. ¶ 72), not from the alleged bias itself. To that end, Plaintiff argues that although the Appellate Division found the record "'devoid of evidence' of Sabini's bias," nowhere did the court decide "that Plaintiff was or was not deprived due process when the RWB denied him an opportunity to be heard on the issue of Sabini's bias and conflict." (Pl. Opp. to State Defs. at 13 (quoting Dutrow, 97 A.D.3d at 1035)).

Plaintiff's attempts to thread this needle are unavailing. "To meet the identity-of-issues prong of collateral estoppel, it is not necessary that the issues be exactly identical; it is sufficient that 'the issues presented in the earlier litigation are substantially the same as those presented by

---

[3]      The Court notes that res judicata, or claim preclusion, "generally does not operate to bar a § 1983 suit following the resolution of an Article 78 proceeding, since the full measure of relief available in the former action is not available in the latter." Colon v. Coughlin, 58 F.3d 865, 870 n.3 (2d Cir. 1995).

# SPA10

the later action.'" <u>Zherka v. City of New York</u>, 459 Fed. App'x 10, 13 (2d Cir. 2012) (quoting

<u>ITT Corp. v. United States</u>, 963 F.2d 561, 564 (2d Cir. 1992)) (internal bracketing omitted); <u>see</u>

<u>Postlewaite v. McGraw-Hill</u>, 333 F.3d 42, 48 (2d Cir. 2003) ("The prior decision of the issue

need not have been explicit. . . . If the decision was implicitly necessary, it will be the basis for

collateral estoppel." (internal quotation marks omitted)).  Defendants have sufficiently shown

identity of issues in this case.  At bottom, the issue in each litigation concerns whether Sabini's

alleged bias and conflict unfairly tainted Plaintiff's administrative proceeding and led to a

preordained outcome.

### 2.    Full and Fair Opportunity to Litigate

The burden therefore shifts to Plaintiff to show that he was not afforded a full and fair

opportunity to litigate his issue in the Article 78 proceeding.  Under New York law, "a court

must consider 'the realities of the [prior] litigation, including the context and other circumstances

which . . . may have had the practical effect of discouraging or deterring a party from fully

litigating the determination which is now asserted against him.'"  <u>Thomas</u>, 925 F. Supp. 2d at

361 (quoting <u>Ryan v. N.Y. Tele. Co.</u>, 62 N.Y.2d 494, 501 (1984)) (alterations in original).

Plaintiff argues that because the hearing officer and the RWB "deprived [him of] the opportunity

to develop a record on Sabini's bias and conflict regarding his [dual roles]," Plaintiff could not

fully litigate the bias issue in the Article 78 proceeding.  (Pl. Opp. to State Defs. at 16).

State Defendants respond by detailing the "extensive proceedings below."  (State Defs.

Reply at 6).  As noted, state court records indicate that Plaintiff initially raised the issue of

Sabini's involvement to the hearing officer by oral and written motion and then by letter to

Sabini himself.  The former stated it was not within his authority to decide the issue; the latter

declined to recuse himself.  After Plaintiff's requests were denied and he lost at the RWB

# SPA11

hearing, he raised the same bias issue in his detailed Petition and pursued appeals to the highest state court. In rejecting Plaintiff's claim that he was denied a fair hearing by Sabini's refusal to recuse himself, the Appellate Division specifically noted the communication from the U.S. Senator's office, the emails and press release that followed, and the overlapping relationships among ARCI, the RWB, and Sabini – the same allegations that had been raised and briefed before the hearing officer.[4]

Aside from reciting in conclusory fashion that he was "denied the opportunity to fully and fairly develop a record," (Compl. ¶¶ 34; 65-66), Plaintiff suggests no additional information he would have put before the Appellate Division. Having failed to show that he was not afforded a full and fair opportunity to litigate these issues, Plaintiff is collaterally estopped from asserting his § 1983 claims in the instant action. Accordingly, the Court need not address the remaining grounds asserted by State Defendants and ARCI for dismissal pursuant to Rule 12(b)(6).

### C.     Supplemental Jurisdiction

Plaintiff also brings a state law claim for prima facie tort, arguing that State Defendants and ARCI intentionally sought to end his career without excuse or justification. (Compl. ¶¶ 90-91). A federal court has supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Nevertheless, a district court "may decline to exercise supplemental jurisdiction over a claim" if, among other reasons, it "has dismissed all claims over which it has original jurisdiction." 28

---

[4]     Colon, upon which Plaintiff relies, (Pl. Opp. to State Defs. at 15), is inapposite. The prisoner plaintiff in that case framed his Article 78 claim in a manner that "did not directly" implicate the issue he later raised in his § 1983 claim – and he had actually withdrawn the bias claim from his Article 78 petition. Colon, 58 F.3d at 871 & n.4. Moreover, the Second Circuit expressed "substantial doubt" that such prison hearings "generally were capable of giving rise to collateral estoppel." Id. at 871.

11

# SPA12

U.S.C. § 1367(c); see Brzak v. United Nations, 597 F.3d 107, 113-14 (2010) ("We have said that

if a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as

well." (internal quotation marks omitted)).  Accordingly, at this early stage of the litigation, the

Court declines in its discretion to exercise supplemental jurisdiction over Plaintiff's state law

claim.

**IV.    CONCLUSION**

For the reasons set forth above, the defendants' motions to dismiss (Docket Nos. 26, 31)

are granted.  Plaintiff's § 1983 claims are dismissed with prejudice and his remaining state law

claim is dismissed without prejudice.  The Clerk of Court is respectfully directed to close this

case.

**SO ORDERED.**

/s/(SLT)

SANDRA L. TOWNES
United States District Judge

Dated: July 29, 2014
Brooklyn, New York

12

# SPA13

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
RICHARD DUTROW, JR.,                                     JUDGMENT
                                                         13-CV- 0996 (SLT)
                        Plaintiff,

        -against-

THE NEW YORK STATE GAMING COMMISSION,
successor in interest to the NEW YORK STATE
RACING AND WAGERING BOARD, et al .,

                        Defendants.
----------------------------------------------------------X

        A Memorandum and Order of Honorable Sandra L. Townes, United States

District Judge, having been filed on July 29, 2014, granting Defendants' motions to dismiss; and

dismissing Plaintiff's § 1983 claims with prejudice and his remaining state law claims is

dismissed without prejudice; it is

                ORDERED and ADJUDGED that Defendants' motions to dismiss are granted;

and that Plaintiff's § 1983 claims are dismissed with prejudice and his remaining state law claim

is dismissed without prejudice.

Dated: Brooklyn, New York                        Douglas C. Palmer
        July 29, 2014                            Clerk of Court

                                         by:     /s/ Janet Hamilton
                                                 Deputy Clerk

# SPA14

## UNITED STATES DISTRICT COURT
for the
### EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X

RICHARD E. DUTROW, Jr.,

        Plaintiff,

       -against-                            13-CV-996 (SLT) (RER)

THE NEW YORK STATE GAMING COMMISSION,
successor in interest to THE NEW YORK STATE RACING
AND WAGERING BOARD, JOHN SABINI, in his official
and individual capacities, DANIEL D. HOGAN, in his official
and individual capacities, CHARLES J. DIAMOND, in his
official and individual capacities, THE ASSOCIATION OF
RACING COMMISSIONERS INTERNATIONAL,
and JOHN and JANE DOES, said names being fictitious
and unknown to the Plaintiff,

        Defendants.

-------------------------------------------------------------------------X

### NOTICE OF APPEAL

     Notice is hereby given that Richard E. Dutrow, Jr., Plaintiff in the above named case, hereby appeals to the United States Court of Appeals for the Second Circuit from an order which granted the Defendants' motions to dismiss the Plaintiff's claims under 42 U.S.C. § 1983 entered in this action on July 29, 2014.

  Date:   August 25, 2014          LAW OFFICES OF MITCHELL C. ELMAN, P.C.

                                    By: */s Mitchell C. Elman 'II*
                                      Mitchell C. Elman
                                      Attorney for Plaintiff
                                      21 Harbor Park Drive North
                                      Port Washington, New York 11050
                                      mitchell@elmanlawny.com
                                      (516) 586-6666